NO. 07-06-0467-CV



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL C



JULY 24, 2007


______________________________



THE CITY OF AMARILLO, 



 Appellant


v.



PREMIUM STANDARD FARMS, INC., 



 Appellee

_________________________________



FROM THE 69TH DISTRICT COURT OF HARTLEY COUNTY;



NO. 4376H; HON. RON ENNS, PRESIDING


_______________________________



Memorandum Opinion


_______________________________



Before QUINN, C.J., and HANCOCK and PIRTLE, JJ.

 The issue before us concerns the trial court's denial of a temporary injunction. The
latter was sought by the City of Amarillo to enjoin Premium Standard Farms, Inc. from
allegedly producing excessive amounts of water from realty adjoining that in which the City
had an interest. The trial court denied the preliminary injunction. On appeal, Amarillo
would have us hold that denying the injunction evinced an instance of abused discretion. 
This is purportedly so because the statute at issue did create a private right of action. We
have no choice but to affirm the order given the record before us. 

 Whether to grant a temporary injunction lies within the trial court's discretion. Alert
Synteks, Inc. v. Jerry Spencer, L.P., 151 S.W.3d 246, 253 (Tex. App.-Tyler 2004, no pet.). 
But, before we can say that such an abuse occurred, the applicant must first plead a viable
cause of action and illustrate to the trial court that he has a probable right of recovery and
faces probable imminent and irreparable injury if interim relief is not granted. Butnaru v.
Ford Motor Co., 84 S.W.3d 198, 204 (Tex. 2002); Miller Paper Co. v. Roberts Paper Co.,
901 S.W.2d 593, 598 (Tex. App.-Amarillo 1995, no writ). In other words, the applicant
must do more than simply contend that he has a cause of action against his opponent. 

 Establishing a probable right of recovery implicitly mandates the presentation of
some evidence satisfying the elements of the cause of action. For instance, because our
common law recognizes a cause of action for breached contract, that does not ipso facto
mean that anyone who merely asserts that his opponent breached the agreement is
entitled to relief, preliminary or otherwise. Some evidence of a contract and its breach
resulting in injury must be given the trial court before it can legitimately say that there
indeed exists any probability that the complainant may recover upon the allegation. And,
therein lies the problem here.

 Irrespective of whether §36.119 of the Water Code created a private cause of
action, no evidence was presented to the trial court to satisfy the elements of what the City
believed to be its cause of action. This may be because no evidentiary hearing was
conducted. Nevertheless, without that evidence, we have no basis to assess whether a
probable right of recovery existed or whether the City faced probable injury if relief was not
granted. In other words, the void precludes us from assessing the accuracy of the trial
court's ultimate decision to deny the request for a temporary injunction. Again, even if we
were to say that §36.119(a) created a private cause of action, we could not say that the
circumstances contemplated by the parties warranted a preliminary injunction since neither
we nor the trial court have or had evidence of what those circumstances were. See Alert
Synteks, Inc. v. Jerry Spencer, L.P., 151 S.W.3d at 253 (stating that it is an abuse of
discretion to issue a temporary injunction where no evidence that would support it was
presented to the trial court). 

 Being unable to determine that the trial court abused its discretion in denying the
City's request for a preliminary injunction, we affirm the order doing so.


 Brian Quinn

 Chief Justice



ether consent to search was voluntarily given an
officer. Id. 

 Issue Three - Search of Room

 A search based on consent is an exception to the warrant and probable cause
requirements of our federal and state constitutions. Balentine v. State, 71 S.W.3d 763, 772
(Tex. Crim. App. 2002). However, the State must prove, by clear and convincing evidence,
that the consent was voluntary. Reasor v. State, 12 S.W.3d 813, 818 (Tex. Crim. App.
2000). And, in determining whether it met that burden, we consider the totality of the
circumstances. Id. 

 Here, appellant argues that the "central issue of this appeal is . . . whether the officer
had articulable reasonable suspicion that crime was occurring . . . before he attempted his
knock and talk maneuver." Irrespective of how appellant labels his contentions on appeal,
he simply characterized them below as a dispute involving whether the dialogue between
the officer and appellant was an investigation or consensual encounter. He said little if
anything about the voluntariness of the consent given to search the room. Thus, it could
be said that the issue before us was not preserved for review.

 Nonetheless, we note that under both federal and state law, an officer may approach
a citizen in a public place or knock on a door to ask questions or seek consent to search. 
State v. Perez, 85 S.W.3d 817, 819 (Tex. Crim. App. 2002); James v. State, 102 S.W.3d
162, 173 (Tex. App.--Fort Worth 2003, pet. ref'd). He need not have reasonable suspicion
or probable cause to do so as long as the officer does not indicate that compliance is
required. Hunter v. State, 955 S.W.2d 102, 104 (Tex. Crim. App. 1997); Middleton v. State,
9 S.W.3d 428, 431 (Tex. App.--Houston [14th Dist.] 1999, no pet.). Therefore, the officer
at bar was entitled to 1) knock on the motel room door, 2) ask questions of those who
responded to his knock, and 3) request consent to search the room as long as he did not
lead appellant to believe he had no right to refuse. 

 Next, appellant argues his consent was involuntary because 1) DeeDee felt
compelled to open the door after she was told that there was a police officer outside the
door, 2) the couple was sharing an intimate evening and would not have opened the door
unless they felt they had to, 3) the officer was in uniform and armed, 4) the officer called
for back-up prior to searching the room, and 5) the officer failed to tell appellant that he
could refuse the request. The fact that a person is in custody, handcuffed, or simply not
free to go does not necessarily mean consent to a warrantless search is involuntary. See
Johnson v. State, 68 S.W.3d 644, 653-54 (Tex. Crim. App. 2002); Reasor v. State, 12
S.W.3d at 818-19; Strauss v. State, 121 S.W.3d 486, 493 (Tex. App.--Amarillo 2003, pet.
ref'd); Goldberg v. State, 95 S.W.3d 345, 361 (Tex. App.--Houston [1st Dist.] 2002, pet.
ref'd), cert. denied, 540 U.S. 1190, 124 S.Ct. 1436, 158 L.Ed.2d 99 (2004). Given this, we
are hard-pressed to say that the presence of a police officer in uniform and armed ipso
facto renders consent involuntary, as appellant suggests. Nor does it when coupled with
evidence that the officer called for backup after receiving the consent. This is especially
so in view of the testimony that 1) weapons were not drawn at anytime, 2) the occupants
of the room had the option not to speak with the officer, 3) the occupants were not under
detention, and 4) the officer remained outside until receiving consent to search. Moreover,
whatever DeeDee may have felt when told that an officer was present is mere speculation;
she did not testify at the hearing. Nor does it logically follow that one's answering a knock
on the door must be deemed involuntary when told of an officer's desire to speak with the
person and the person is party to an intimate evening in a motel room. 

 Additionally, that the officer failed to inform appellant of his right to refuse consent
or remain silent does not outweigh all other circumstances of record illustrating that
appellant voluntarily consented to the search of his motel room. See Johnson v. State, 68
S.W.3d at 652-53 (stating that although an officer's failure to inform the accused that he
can refuse consent is a factor to consider, the absence of such information does not
automatically render the consent involuntary). At the very least, we find sufficient evidence
of record upon which the trial court could have concluded that appellant's consent was
indeed voluntary. Thus, we overrule issue three, involving the initial authority to search the
room in general. 

 Issues One, Two and Four - Search of Ice Bucket and Eyeglass Case 

 The remaining three issues deal with the officer's search of the up-turned ice bucket
and an eyeglass case once he gained entry into the room via appellant's consent. 
Appellant argues that searching the bucket and case exceeded the scope of consent
granted the officer. We overrule the issues.

 During the suppression hearing, appellant did not dissect the officer's action into
three different searches, i.e. the initial entry into the room, perusal of the ice bucket, and
perusal of the eyeglass case, as he does on appeal. Nor did he specifically complain about
the officer's action viz the bucket and case. Instead, he told the trial court that the issue
before it involved whether "this was an investigative detention or a consensual encounter." 
Nothing was said about the topic of exceeding the scope of consent he gave the officers. 
Consequently, the matter encompassed within issues one, two, and four were not
preserved for our review. Wilson v. State, 71 S.W.3d 346, 349 (Tex. Crim. App. 2002) (the
complaints asserted on appeal must comport with those raised below, otherwise they are
waived).

 Accordingly, the judgment of the trial court is affirmed.



 Brian Quinn 

 Justice 

Do not publish.
1. The Fourth Amendment to the federal constitution and article I, §9 of the Texas Constitution are the
same in material aspects but are to be construed independently. Richardson v. State, 865 S.W.2d 944, 948
(Tex. Crim. App. 1993); Uresti v. State, 98 S.W.3d 321, 329 (Tex. App.--Houston [1st Dist. 2003, no pet.). 
When a defendant does not separately brief his claims under the federal and state constitutions, however, we
assume he claims no greater protection under the state constitution. Varnes v. State, 63 S.W.3d 824, 829
(Tex. App.--Houston [14th Dist.] 2001, no pet.). Appellant does argue here that the Texas constitution provides
greater protection with respect to the search of closed containers than the federal constitution and relies on
Autran v. State, 887 S.W.2d 31 (Tex. Crim. App. 1994) to support the proposition. Yet, Autran was a plurality
decision and, as such, does not bind us.