**CITY OF CORPUS CHRISTI, Appellant,**

v.

**CORPUS CHRISTI POLICE OFFICERS ASSOCIATION and Norman D. Perry d/b/a Par Productions, Appellees.**

No. 1216.

Court of Civil Appeals of Texas, Corpus Christi.

Oct. 20, 1977.

Rehearing Denied Nov. 10, 1977.

J. Bruce Aycock, City Atty., Corpus Christi, for appellant.

Bob Spann, Spann, Perry & Smith, Corpus Christi, for appellees.

## OPINION

NYE, Chief Justice.

The City of Corpus Christi appeals from a temporary injunction enjoining the city from enforcing its solicitations ordinance against the appellees. The City contends that the trial court's ruling adjudicated the ultimate issue of the applicability of the solicitations ordinance to the Police Officers Association's fund raising activity when it denied the City's suit to require compliance with the ordinance. We do not agree that the trial court decided the issue on the merits. Rather, we affirm the judgment which maintained the status quo between the parties, leaving the ultimate issues for a trial on the merits.

The solicitations ordinance[1] of the City of Corpus Christi and the procedures by which it is administered seek to regulate fund raising activities for charity or charitable groups in order to protect both the donating public and the recipient charitable organizations from channelling purportedly charitable donations into excessive promotional costs. A limitation of 20% of gross receipts is the presumed limit for reasonable costs of solicitation or promotion of a fund raising activity, subject to variation by the city's Solicitations Commission upon showing that higher expenses are reasonable. Corpus Christi Code, Sec. 38–25(7).

The Police Officers Association is a nonprofit corporation composed of Corpus Christi police officers. The Articles of Incorporation adopted in 1955 define the purposes for which it was created:

> The purposes for which the corporation is formed are the support of benevolent, charitable, educational or missionary undertakings, and in particular, the promotion and development of a friendly and fraternal spirit among all of the employees of the Police Department of the City of Corpus Christi, the advancement of their mutual interests, the provision for both moral and material aid to its members, the encouragement of athletics and social activities, and the increase generally of the efficiency of the individual members of the Department as public servants.

The types of activities which could be included in the organization's list of purposes could not have included collective bargaining when the articles were adopted, but in 1973 the legislature granted cities having police and/or fire departments the right to adopt the provisions of Art. 5154c–1, Tex. Rev.Civ.Stat. (1973), which permits collective bargaining by these groups. On December 31, 1975, the Police Officers Association and the City of Corpus Christi entered into their first contract pursuant to the city's adoption of the provisions of Art. 5154c–1, with the Police Officers Association acting as the bargaining unit. The Association therefore embraces a variety of activities, including charitable, fraternal, and collective bargaining.

Periodic fund raising projects are sponsored by the Association. The record shows the Association for the past two years has sought and received a permit from the city's Solicitations Commission for the right to sell tickets to a dance, the proceeds of which were to be used for charitable purposes. In 1977 the application for a permit to sponsor a country-western show was presented, but the Solicitations Commission considered the contract between the Association and professional promoter Norman Perry d/b/a PAR Productions to be in violation of the solicitations ordinance regarding promotional costs, and requested a new contract to be drawn in conformance with the ordinance. An initial determination was made by the Solicitations Commission that a maximum of 25% of gross receipts could be paid in promotional costs.

The contract with PAR Productions provided for payment of promotional costs, then a division of profits as follows: (1) 10% to the Combined Law Enforcement Associations of Texas (CLEAT), (2) the next $5,000 to the Police Officers Association, (3) the next $5,000 to PAR Productions, and (4) an equal division of any remaining profits between the Association and PAR Produc-

---

1. Sec. 38–22. Permit-Required; exception.

No person shall be permitted to solicit or to accept alms or gifts in money, money orders, checks, merchandise, trade or any other thing or article representing monetary value, directly or indirectly, for or on behalf of any person or charitable, patriotic, social, religious or philanthropic organization in the city; nor shall any person promote or participate in any entertainment, benefit dance, fair, bazaar or any other type of organized social entertainment in the name of charity, patriotism, religion or philanthropy; nor shall any person sell or seek to sell by manually delivered handbills, advertisements or house-to-house contacts, articles or products of any nature whatsoever in the name of and for the alleged benefit of handicapped, disabled or underprivileged citizens of the city, without first acquiring a permit so to do as provided in this article. This section shall not be construed so as to require any organization to obtain a permit before soliciting funds from its own membership at any time or at any place within the city. (Code 1958, § 26–12)

tions. Rather than renegotiating the contract with PAR Productions on different terms as requested by the Solicitations Commission, the Association decided it was not subject to the ordinance because it was not soliciting gifts, nor was it raising money in the name of charity. It withdrew the application and, without a permit, it continued to sell tickets to the country-western show through the professional promoter pursuant to their original contract.

Early promotional efforts included requests for donations and listed charitable interests of the Association as potential recipients of the profits from ticket sales. This practice was stopped by the Association two weeks prior to the temporary injunction hearing. Telephone salespersons and advertisements were limited to stating that the funds would be used for the Police Officers Associations' "general operating fund." The Association contends that use of the term "general operating fund" adequately informed the public that net proceeds from ticket sales would be used to support its overall program, and not specifically directed to charitable interests outside the Association.

Both the Police Officers Association and the City filed suit. The City sought to temporarily restrain and enjoin the Association from further selling tickets without a permit, and to account and reimburse all funds collected without the permit. The Association sought a declaratory judgment to the effect that the solicitations ordinance is inapplicable and for an injunction to prevent the City from interfering with the sale of tickets or interfering with the performance of the country-western show. Both suits were consolidated for trial.

The trial court, sitting without a jury, rendered judgment in which: (1) the City's prayer for injunction was denied; (2) the City was enjoined from interfering with the promotion and sale of tickets; (3) the Police Officers Association and PAR Productions were enjoined from representing that profits were to be used for anything except the Association's general operating fund; (4) no solicitation of gifts or donations was to be made; (5) all receipts of less than $6.00 per order (the price of a single ticket)

were to be treated as donations and refunded to the donors; (6) all promotional costs must be reasonable; (7) the promoter was to receive a maximum of 25% of gross receipts to cover his reasonable costs, with the excess held by the Association pending further determination by the court or a disposition on the merits; and (8) the City may give permits for advertisement of the show without constituting an admission against interest by the City.

The country-western show "went on" as scheduled. Therefore, some of the matters covered by the trial court's judgment are now moot and will not be considered. In its first point of error, the City complains that the trial court erred because the evidence shows the Association comes within the solicitations ordinance, and therefore its prayer for injunction should have been granted and the Association's should have been denied. The City strongly contends that the articles of incorporation of the Association define the Association as a charitable organization, and as such, all of its fund raising activities unequivocally fall within the purview of the ordinance, and that the Association's previous applications for solicitation permits and previous methods of collecting funds prove its inherent nature as a charitable organization.

Whether the sale of tickets to raise funds for the general operating fund of an organization whose actual activities are both charitable and non-charitable is subject to the City's solicitations ordinance is the ultimate issue to be decided on the merits. The judgment contains no finding concerning the applicability of the solicitations ordinance, and the denial of the City's plea for a temporary injunction cannot be construed as such a finding.

The questions before the trial court in any temporary injunction hearing are whether the plaintiff shows probable injury if temporary equitable relief is denied, a probable right on the merits, and lack of an adequate remedy at law. As stated by the Supreme Court:

"In a hearing on an application for a temporary injunction the only question before the court is the right of the appli-

cant to a preservation of the status quo of the subject matter of the suit pending a final trial of the case on its merits. . . To warrant the issuance of the writ, the applicant need only show a probable right and a probable injury; he is not required to establish that he will finally prevail in the litigation. . . . Where the pleadings and the evidence present a case of probable right and probable injury, the trial court is clothed with broad discretion in determining whether to issue the writ and its order will be reversed only on a showing of a clear abuse of discretion. . . . There is no abuse of discretion in the issuance of a writ if the petition alleges a cause of action and the evidence adduced tends to sustain it."

*Transport Co. of Texas v. Robertson Transports,* 152 Tex. 551, 261 S.W.2d 549 (1953). See also *State v. Southwestern Bell Telephone Company,* 526 S.W.2d 526 (Tex.Sup. 1975), *Inman v. Padrezas,* 540 S.W.2d 789, 797 (Tex.Civ.App.—Corpus Christi 1976, no writ), *Corpus Christi Classroom Teachers Association v. Corpus Christi Independent School District,* 535 S.W.2d 429, 431 (Tex. Civ.App.—Corpus Christi 1976, no writ).

■ Because no judicial determination of the applicability of the solicitations ordinance has been made, the City is incorrect in asking this Court to reverse a judgment it contends was based on such a determination. Appellant's first point is overruled.

The purpose of a temporary injunction is to preserve the "last actual, peaceable, non-contested status which preceded the pending controversy." *State v. Southwestern Bell Telephone Company,* supra, *Transport Co. of Texas v. Robertson Transports,* supra. In this case, the last peaceable, non-contested status occurred before February 18, 1977, when the Police Officers Association withdrew its application for a permit. Prior to that time, the Association complied with the City's request to apply for a permit by preparing and presenting an application. When the Solicitations Commission found the application unacceptable and the Association withdrew the application as unnecessary, the parties then stood in adversary positions. At that point, ticket sales and arrangements for staging the show were in progress. Not all expenses had yet been incurred, nor had sales been completed. Funds were not disbursed beyond the percentage permitted in the solicitations ordinance, nor were they available yet for distribution under the formula in the contract with the promoter. It is this status quo which the temporary injunction sought to maintain until the rendition of a final decision on the merits.

In its brief the City prayed for an injunction to stop ticket sales and cancel the show unless the Association complied with the ordinance and, in the alternative, for a declaration that the ordinance applies, and the funds be distributed accordingly. Thus, the City's ultimate purpose would be satisfied if the funds were available to be disbursed under the restrictions of the ordinance if and when a judicial determination of the applicability of the solicitations ordinance were made.

■ The judgment of the trial court properly accomplished the preservation of the status quo by permitting the ticket sales to continue under the conditions stated in the judgment, and requiring the funds to be held in such a manner that they could be disbursed under either the ordinance or the contract, whichever was ultimately deemed applicable. There was no abuse of discretion in the denial of the City's application for temporary injunction or the granting of the Association's application.

■ In its second point of error, the City contends the trial court erred in admitting into evidence a letter and attachments purporting to be from the District Director of the Internal Revenue Service pertaining to the tax exemption of the Combined Law Enforcement Associations of Texas as a labor organization. The admissibility of this letter is immaterial to the disposition of this appeal because its relevance, if any, concerns only the ultimate issue of whether or not the Police Officers Association's fund raising activity comes within the purview of the solicitations ordinance. Since this issue will not be decided until a ruling is made on the merits, it is not material to this appeal. Appellant's second point of error is overruled.

The judgment of the trial court is AFFIRMED.